The opinion of the court was delivered by
.Spencer, J.
The petition alleges that during the sickness of. Philip *107 Drumm, Sr., the defendant, his widow, took possession of $3150 in cash, •and a mortgage note for $1000, executed by Edmond J. Bobet, being the proceeds of sales of two pieces of property made by deceased to said Bobet, on January 9,1875, and converted the same to her own use, and prays judgment against her for the same.
The defendant pleads, first, a general denial. Second, that the mortgage note for $1000 was given to her by her husband in part payment of her dowry of $4000, settled upon herself in her marriage contract, which is made part of her answer. Third, that she is entitled to $1000 for mourning dfesses and sustenance for herself and family during the year of mourning, in lieu of interest on her said dowry.
And then assuming the position of plaintiff in reconvention, she pleads said claims in compensation and reconvention, and asks for judgment therefor, less the $1000 already paid by her husband.
The evidence satisfies us that the defendant did not receive the •cash claimed, $3150, but that said money was all paid out by Philip Drumm, during his life. She did receive the $1000 mortgage note, as she herself admits.
The question which determines the issues remaining, is, was the ■sum of $4000 brought into marriage by the wife, dotal, under the marriage contract which preceded the nuptials ?
The marriage contract reads as follows:
“Which said appearers severally declared that whereas they had resolved to join themselves together in the bonds of matrimony, and had in consequence mutually agreed, before the celebration of the marriage, to enter into a formal marriage contract, in order thereby to define and establish the rules and regulations by which their said intended marriage shall be governed.
“ Wherefore, and in consideration of the premises, the said parties have mutually agreed, determined, and contracted, and by these presents ■do mutually agree, determine, and contract as follows, to wit:
First. — “There shall be and exist a community of acquets and gains between the said intended husband and wife, under the modifications and stipulations set forth as follows, to wit:
“ The property now belonging to the said intended husband, exclusive of that which belongs to the succession of his late wife, Mistress Margaret Huhner (deceased,) is hereby valued at the sum of twenty thousand dollars ($20,000.)
“ The property now belonging to the said intended wife, all of ■which has been acquired by her since the death of her said late husband, nnd by her own industry, and is hereby valued at the sum of four thousand dollars ($4000.)
“ The said property shall be brought into the said intended mar *108 riage as common or community property, with the distinct understanding and agreement between the said parties,
. 1. “ That the principal or capital of the proportions of the property so contributed plus the profits that may be acquired or minus the losses that may be incurred, by its use in said community, as hereafter provided, shall, on the dissolution of the said intended marriage, inure to the use and benefit of the children which each of said parties may have by their former marriage .as aforesaid, subject only to the rights secured by law to parents in making their testamentary dispositions, and to the birth of other children during their said intended marriage, and
“ Second, that the profits, if any may be acquired by said parties during their said intended marriage, shall inure and belong to them respectively and their heirs, in proportions similar to the amounts as aforesaid by them severally invested in said community. That is to say, the amount of property brought into the said community by the said intended husband, being five fold greater than that brought into the same by the said intended wife, his share in the profits thereof shall1 be five fold greater than hers, and should the employment of said property or the labor of said community result in loss, the amount of such losses shall be sustained in the same proportions by the said intended husband and wife respectively.
2. “ Neither of the said parties shall be held liable or responsible for the debts of the other contracted prior to said intended marriage.
3. “ The property herein before referred to, as constituting the capital of the limited community hereby established, shall be under the management and control of the said intended husband.”
The defendant contends that under this contract the $4000 brought by the wife were dotal. • The plaintiff asserts that they were put into the community and became a part and parcel of its assets.
We propose to consider, first, whether by the terms of the contract, it was the intention of the parties to make this sum dotal, or to make it a part of the community.
Second, If their intention was to make it community, was the contract so to do lawful.
On the first point there is hardly room for controversy, if we are to attach to words their ordinary and proper signification. The contract declares that there shall be a community. It fixes and declares the amount of property owned by the husband, as also the amount owned by the wife. It declares “ that said property shall be brought into said-intended marriage as common or community property. That the principal or capital of the property so contributed, plus the profits that maybe acquired, or minus the losses that may be incurred by its use in said *109 ■community,” shall on the dissolution of the marriage inure to the use, etc., of the children which each of said parties may have by their former marriage, etc. It provides the proportion in which these profits and losses shall be sustained, to wit: in proportion to the respective amounts contributed. It declares that “ the property herein before referred to, as constituting the capital of the limited community hereby established,” shall be under the control of the husband.
It seems that there were losses sustained by this community.
Under the terms of this contract, “ the principal or capital” contributed by the wife can only be withdrawn, minus her proportionate share ■of “ the losses.”
We hold, therefore, that it was the intention of the contracting parties to put their money and effects as estimated into the contemplated ■conjugal partnership as capital.
2. Was such a contract lawful and within their power ?
C. C., art. 2305, provides: “ In relation to property, the law only Tegulates the conjugal association in default of particular agreements, which the parties are at liberty to stipulate as they please, provided they be not contrary to good morals, and under the modifications hereafter presctibed.” The Code then goe^, on to enumerate certain agreements which they can not make, such as altering the legal order of descent, derogating from the marital power, etc.
Art. 2309 declares that matrimonial agreements may be altered by ■consent before, but not after, the marriage.
Art. 2338. “ Whatever in the marriage contract is declared to belong to the wife, or to be given to her on account of the marriage, etc., is part of the dowry, unless there be a contrarxj stipulation.”
We have seen that there was in this case “ a contrary stipulation.” The only question is, as to the legality of that contrary stipulation.
The defendant asserts that said stipulation is null and void:
1. Because it violates art. 2412, whereby “ the wife, whether separate in property by contract or by judgment or not separated, chn not bind herself for her husband, nor conjointly with him, for debts contracted by him before or during the marriage, etc.” It was by reason of this article that the district judge gave judgment for defendant. But it •seems manifest to us that this article refers and can only refer to obligations assumed by the wife after the marriage. The whole theory of that article rests upon the presumed existence and exertion of the marital authority. Such an application of the article would nullify the greater part of the provisions of the Code under the head of marriage ■ contracts. Prior to the marriage, the law treats the intended wife as sui juris, as a free agent; but after it, it treats her as subject to the ■ power and authority of the husband, and as .no longer able to protect *110 herself. Henee it interposes to shield her from impositions and wrong.
2.' It is contended in the next place that the said stipulation violates article 1752, R. 0.0., which forbids a man or woman contracting a second marriage, having children by a previous one, from giving to the other more than the least child’s portion in usufruct, etc. We do not see-how it can be said that the wife gave any thing to her husband in this case. So far from giving, she carefully provided for the return of her contribution to the partnership, plus all profits or minus all losses resulting from the venture.
3. It is further contended that the stipulation is in contravention of public policy. The case of Belongnet vs. Lanata, 13 A. 15, is cited as authority that the law prohibiting the alienation of dotal property is a law of public order. That is. doubtless true ; but before it can be invoked it must appear that the property is dotal. That is the very question in dispute, and the very argument begs the question. If the property is not dotal, the authority is inapplicable. If it is dotal, we fully agree to the proposition. But we have seen that by the very words of the contract the property was put into the community. If that stipulation be lawful, then the property is not dotal, but community. We have seen that under art. 2305 0. 0. the parties may, by marriage contract, stipulate “as they please” relative to their property rights, provided it be not contrary to good morals, or prohibited by the Code. We see no-reason to say that an ante-nuptial agreement between parties contemplating marriage, whereby they put their respective means into a common fund, to be employed for their common benefit, should be immoral or illegal. Why should the wife not be permitted to contribute to this fund, when she is to share its benefits ? Why should she be compelled to take all the chances of gain, and none of loss ? Why should she not be permitted to participate, if she so elects, by ante-nuptial agreement, in the risks which life imposes upon her husband and his property ? What is there wrong or immoral in a woman agreeing to share the fate of her intended husband ? We agree with plaintiff’s counsel that the law favors, and ought to favor the community. In the absence of proof to the contrary, it presumes that all property existing at the dissolution, of the marriage belongs to it.
4 But it is said that art. 2371 prescribes and specifies of what the community is composed. That it is restrictive and mandatory. That article regulates and defines the “ legal community” not the conventional community. It provides for the case where there is no agreement of parties, when they have been silent. It has no’ reference to the cases, foreseen by articles 2305 and 2393, where the parties have modified by agreement the extent and character of the conjugal partnership,
5. But it is said the parties by their subsequent acts and conduct *111 have shown, that it was not their intention to make this $4000 community property. The answer to this is, that marriage contracts can not be-changed or altered after marriage, even by formal agreement, much les» by indirection, by acts and declarations. Their contract was reduced to-writing. It can not be varied by what was said before, at the time of, or-after its confection. O. 0. (2270) 2256.
We see no reason, and know no law, interdicting the parties from stipulating that the sums brought in marriage should enter into and become part and parcel of the community. On the contrary, the adjudicated cases are clearly in favor of the existence of the right. In the case of Fabre vs. Spacks, 12 R. 32, the first clause of the marriage contract stipulated that “there shall be a community between them,, which shall comprehend all their estate, real and personal, present and to come.” The second established the amount brought in by the husband. The third specified the property owned by the wife at the date-of the marriage.
The fifth clause was in these words: “ In case of the death of either'the husband or wife, without children, etc., the amount of the-property brought into this community by the one that shall die first, with the profits arising from the community, shall revert to the survivor,, etc.” Under this contract this court held that by the first clause all the-wife’s property was constituted community, and that by the fifth clause-the husband took it all to the exclusion of the wife’s collateral heirs.
The doctrine of this case was affirmed in “ Succession of Mossy” 4 A. 338, where the court expressly recognize the right of the wife by-marriage contract to put her property into the community.
We therefore hold that the $4000 brought into marriage by Mrs.. Drumm fell into and became part of the community ; that she has nt> dotal rights under said contract; that the pretended dation enpaiement of the $1000-mortgage note is null and void, and that the executor of Philip Drumm is entitled to recover the same or its amount.
It is therefore ordered and decreed that the judgment appealed' from be avoided and reversed, and it is now ordered and decreed that the plaintiff as executor do recover of the defendant the mortgage note-described in his petition, to wit: the note of Ed. J. Bobet, dated January 9, 1875, payable one year thereafter, for one thousand dollars,, bearing eight per cent interest from its date, and that said defendant-deliver the same to said plaintiff. That in default of such delivery,, within ten days from notice of this judgment, said plaintiff recover of the said defendant, in money, the amount of said note, to wit, one thousand dollars, with eight per cent interest from January 9, 1875, till paid-It is further ordered that the defendant pay costs of both courts.
Rehearing refused.